**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT**

CIVIL ACTION NO. 19-83-DLB

ALI AL MAQABLH                                                                                                           **PLAINTIFF**

v.                       **MEMORANDUM OPINION AND ORDER**

JOHN CARTER, et al.                                                                      **DEFENDANTS**

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Ali Al Maqablh, proceeding without an attorney, has filed a Complaint (Doc. # 1) alleging various violations of his civil rights. The Court previously granted Al Maqablh's request to proceed *in forma pauperis* in this action. (Doc. # 6). Accordingly, the Court now conducts a preliminary screening of Al Maqablh's claims. *See* 28 U.S.C. § 1915(e)(2). For the reasons set forth herein, Al Maqablh's claims are **dismissed**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Al Maqablh is a native of Jordan and a practicing Muslim who currently resides in Louisville, Kentucky. (Doc. # 1 at 3). Al Maqablh claims that three private individuals—Mary Eade (an attorney), Lindsey Alley (Al Maqablh's former wife), and Derrick Norberg (Alley's new significant other)—conspired together with John Carter, the Special Prosecutor for Trimble County, Kentucky, to subject Al Maqablh to malicious prosecution and other violations of his constitutional rights because of his race and religion. *See* (Doc. # 1 at 1–4). Al Maqablh names Eade, Alley, and Norberg as individual defendants, and John Carter as a defendant in both his individual and official capacity. (Doc. # 1). Al

1

Maqablh alleges conduct taking place from May 2014 to August 2019.[1] *Id*. at 7–19. Notably, this is not Al Maqablh's first federal lawsuit alleging malicious prosecution against his former wife and county prosecutors. *See Al-Maqablh v. Crystal Heinz*, et al., Case No. 3:16-cv-289-JHM (W.D. Ky.) (filed May 18, 2016). Because of Al Maqablh's financial status, the Court has allowed him to proceed as a pauper in this case. (Doc. # 6). Accordingly, 28 U.S.C. § 1915 now provides for a preliminary screening of Al Maqablh's claims. *See, e.g.*, *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) (noting the district court must still screen complaints filed by non-prisoners under § 1915(e)).

## II. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 1915(e)(2), the Court shall dismiss any portion of Al Maqablh's Complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant. Because Al Maqablh is proceeding without an attorney, the Court evaluates his Complaint under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage of the proceedings, the Court accepts Al

---

[1] Al Maqablh filed his Complaint on December 2, 2019. (Doc. # 1). Ordinarily, a plaintiff's violation of a claim's statute of limitations is an affirmative defense; however, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *See, e.g., Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)). While the Court primarily dismisses Al Maqablh's claims for the various reasons set forth below, the Court does point out that a number of Al Maqablh's federal claims have a one-year statute of limitations. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990) (explaining Kentucky § 1983 actions have a one-year statute of limitations); *Huang v. Presbyterian Church (U.S.A.),* 346 F. Supp. 3d 961, 974 (E.D. Ky. 2018) (explaining Kentucky § 1985 actions have a one-year statute of limitations). Thus, on the face of the Complaint, Al Maqablh's §§ 1983 and 1985 claims concerning conduct prior to December 2018 would also be properly dismissed as time-barred.

Maqablh's factual allegations as true and liberally construes Al Maqablh's legal claims in his favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Upon review, and even liberally construing the pro se Complaint, Al Maqablh's claims in this case must be dismissed. Al Maqablh claims the Defendants violated several federal statutes and committed a number of state law torts and constitutional violations. The Court addresses the federal claims first and then considers the state law claims.

### B.     Claim Under 42 U.S.C. § 1981

Al Maqablh claims the Defendants have violated 42 U.S.C. § 1981. Al Maqablh suggests this federal provision guarantees him the right "to be free from racially motivated intimidation, harassment, conspiracy, coercion, arrests, searches, and the filing of false charges." (Doc. # 1 at 21). However, § 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001)). More specifically, "[t]he statute's protection extends to 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Christian*, 252 F.3d at 868 (quoting § 1981(b)).

Here, Al Maqablh has not identified any contractual relationships to which he and any of the Defendants were bound. Nor has Al Maqablh alleged any of the Defendants wrongfully modified or terminated a contract. Because Al Maqablh makes no reference to any contracts at play, he has not properly alleged a cause of action under § 1981. *See, e.g., Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Any claim brought

under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights."). This claim is dismissed.

C. **Tortious Conspiracy Claims**

Al Maqablh also accuses the Defendants of violating 42 U.S.C. §§ 1985 and 1986 by committing tortious conspiracy against him, which violated his substantive due process rights. (Doc. # 1 at 21–25). In bringing these claims, Al Maqablh does not clearly articulate which provision of § 1985 he relies upon, but the Complaint references both subsections two and three of § 1985 in passing. *Id*. at 23. Broadly speaking, § 1985(2) "creates a cause of action for a conspiracy to, among other actions, obstruct justice or to intimidate a party, witness, or juror." *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019). Also, § 1985(3) "creates a cause of action for a conspiracy between two or more persons to deprive another of the equal protection of the laws." *Id.*

In this case, Al Maqablh fails to properly plead either a § 1985(2) or § 1985(3) claim. "In order to state a cause of action under the first part of section 1985(2), a plaintiff must allege a nexus between an alleged conspiracy and a federal court proceeding." *Allen v. Allied Plant Maintenance Co. of Tenn*., 636 F. Supp. 1090, 1093 (M.D. Tenn. 1986). Al Maqablh has alleged no such federal nexus here, instead stating that the Defendants' actions were designed to "deter him from seeking justice in family court." (Doc. # 1 at 23).

The second part of § 1985(2) and § 1985(3) concerns class-based conspiracies to obstruct justice or deprive a person from the equal protection of the law. Both these provisions require the conspirators' actions to be motivated by race or another class-based animus. *Moniz v. Cox*, 512 F. App'x 495, 499 (6th Cir. 2013) (internal citations

4

omitted); *Bennett v. Batchik*, 936 F.2d 572, 1991 WL 110385, *6 (6th Cir. June 24, 1991) (unpublished table decision) (internal citation omitted). While Al Maqablh, a Muslim man of Jordanian descent, repeatedly claims he is a member of a protected class, the Complaint fails to plead a plausible conspiracy among the Defendants in the first instance. It is clear that Al Maqablh dislikes and distrusts the Defendants and that the Complaint is rooted in a longstanding domestic dispute between Al Maqablh and Alley. However, a plaintiff must set forth factual allegations that reasonably link the alleged conspirators in an agreement and establish the requisite "meeting of the minds." *See Coker v. Summit Cty. Sheriff's Dep't*, 90 F. App'x 782, 789 (6th Cir. 2003) (citing *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir.1993). Notably, allegations of conspiracy must involve something more than simply "being involved as an attorney and complainants in the same litigation." *See Batchik*, 1991 WL 110385, at *6 (dismissing a complaint where it alleged only "the type of concerted action which is incident to every judicial proceeding initiated by a private complaint and subsequently litigated by a prosecuting attorney").

Upon review, Al Maqablh's claims that the Defendants collectively agreed to pursue legal action against him—specifically based on his religion and/or race—are too conclusory and attenuated to survive screening. After all, a complaint must contain sufficient factual matter that, accepted as true, states a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible where the factual matter stated "allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556) (emphasis added).

Furthermore, the Complaint also fails to adequately plead an actual obstruction of justice or deprivation of Al Maqablh's due process rights. According to the Complaint, the Defendants initiated "false legal actions" against Al Maqablh twice, (Doc. # 1 at 2), which were the result of a conspiracy to "harass, intimidate and charge [him] with crimes to deter him from seeking justice in family court," *id.* at 23. However, § 1985(3) requires a plaintiff to allege and ultimate prove:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) *whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.*

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (citations omitted) (emphasis added). Here, the Complaint lacks that final element—the injury.

The Complaint states that even after Carter supposedly filed one conspiratorial petition against Al Maqablh in Trimble District Court, Al Maqablh "appeared in family Court and prevailed in accomplishing shared and joint custody." (Doc. # 1 at 14). With respect to the second supposedly conspiratorial petition filed against him, *see id.* at 16–17, the Complaint states nothing about any injuries sustained by Al Maqablh or actual deprivations of his rights. Instead, the Complaint merely notes that the legal action was ultimately terminated in his favor. *Id.* at 17. To summarize, instead of specifically explaining how he was injured or what rights or privileges of which he was deprived, Al Maqablh's Complaint actually suggests his rights were protected by and freely exercised during the normal course of state judicial proceedings. *See id.* at 16–17.

Because the Complaint fails to state a viable § 1985 claim, it also fails to state a § 1986 claim. "Section 1986 creates a cause of action for knowing failure to prevent

6

wrongful acts pursuant to a conspiracy to interfere with civil rights, as described in 42 U.S.C. § 1985. Where a plaintiff has stated no cause of action under § 1985, no cause of action exists under § 1986." *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990) (citing *Williams v. St. Joseph Hospital,* 629 F.2d 448 (7th Cir.1980); *Lyon v. Temple University,* 507 F.Supp. 471 (E.D. Pa. 1981)).

D.   **Federal Malicious Prosecution Claims**

Next, Al Maqablh's Complaint alleges federal malicious prosecution claims against all four Defendants. (Doc. # 1 at 20–21, 25–26). Notably, however, these federal malicious prosecution claims are brought under 28 U.S.C. § 1983, which only applies to deprivations committed by a person acting under color of state law. *See, e.g.*, *West v. Atkins*, 487 U.S. 42 (1988) (internal citations omitted). Al Maqablh has not alleged facts to suggest that Defendants Eade, Norberg, or Alley were acting under the color of state law; instead, the complaint acknowledges the three Defendants are "private citizens."[2] (Doc. # 1 at 4). Private conduct, no matter how discriminatory or wrongful, is not actionable under § 1983. *See, e.g.*, *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

Defendant Carter is at least a state actor for purposes of § 1983, but Al Maqablh's federal malicious prosecution claim against him must also be dismissed. Al Maqablh alleges that Carter wrongfully prosecuted him based on Alley's baseless requests and/or

---

[2]   While a single sentence in the Complaint concludes that Mary Eade "is an individual under the Jurisdiction of the United States acting in the color of the law," Al Maqablh goes on to describe Eade as a "private attorney," (Doc. # 1 at 4), and the Complaint offers no facts to support the notion that Eade was actually acting under color of state law for purposes of § 1983. *See, e.g., Tahfs v. Proctor*, 316 F.3d 584, 593 (6th Cir. 2003) (affirming dismissal where the plaintiff's complaint did not "plead facts, which, if proved, would show [the defendants] to be state actors for purposes of § 1983").

7

his race. (Doc. # 1 at 20–21). However, as the Special Prosecutor for Trimble County, Carter's actions were "advocacy functions intimately associated with the judicial phase of the [legal] process." *See Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997). Carter is thus entitled to absolute prosecutorial immunity, and the fact that Al Maqablh "ascribes impure and malicious motives to [Carter] is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for [Carter's] actions." *See id.*; *see also Imbler v. Pachtman*, 424 U.S. 409, 429 (1976) (explaining that even where a genuinely wronged party is left without redress from a malicious or dishonest prosecutor, absolute prosecutorial immunity still serves the broader public interest); *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (finding absolute prosecutorial immunity even where plaintiff argued the prosecutor colluded with his former wife to help her in a child custody dispute). Al Maqablh's § 1983 malicious prosecution claims are therefore dismissed.

### E.     Federal Abuse of Process Claim

In addition to the previously mentioned federal claims, Al Maqablh also attempts to bring a federal abuse of process claim. (Doc. # 1 at 26–27). Al Maqablh cites no legal authority for a federal abuse of process claim, nor does he attempt to persuade the Court to allow such a claim under § 1983 in his case. Instead, he seems to assume an abuse of process claim is available to him under federal law in this Court.

In reality, the Sixth Circuit "has never specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005). In the absence of additional precedent on the matter, courts within the Sixth Circuit routinely

refuse to allow such claims to proceed. *See, e.g., Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014) ("[A] federal abuse of process claim does not exist in the law of this circuit."); *Conrad v. City of Berea*, 243 F. Supp. 3d 896, 904 (N.D. Ohio 2017) ("[T]he Sixth Circuit does not recognize a federal abuse of process claim under 42 U.S.C. § 1983."). Because Al Maqablh has not offered the Court any persuasive reasons why a federal abuse of process claim should be allowed in this particular case, this claim, like the others, is dismissed.

### F. State Law Claims

Finally, Al Maqablh's Complaint makes reference to malicious prosecution under Kentucky state law, state law abuse of process, and various violations of the Kentucky Constitution. (Doc. # 1 at 25–28). The Court reaches no conclusion as to any of these claims, or any other state law claims Al Maqablh wished to allege. Instead, the Court declines to exercise its supplemental jurisdiction over these claims. The Court has no independent basis for jurisdiction over these claims, *see* 28 U.S.C. § 1367(c)(3), and the balance of judicial economy, fairness, and comity all point toward declining supplemental jurisdiction. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.") (citations omitted). Al Maqablh's state law claims will therefore be dismissed without prejudice.

### III. CONCLUSION

For the reasons stated herein, Al Maqablh's Complaint fails to state a claim upon which relief may be granted and seeks relief from an immune Defendant with respect to

all the federal claims. Those claims, therefore, are properly dismissed upon the Court's initial screening pursuant to 28 U.S.C. § 1915(e)(2).

Accordingly, **IT IS ORDERED** as follows:

(1) Al Maqablh's Complaint (Doc. # 1) is **DISMISSED;**

(2) Al Maqablh's federal law claims are **DISMISSED** on the merits, pursuant to 28 U.S.C. § 1915(e)(2)(B);

(3) Al Maqablh's state law claims are **DISMISSED WITHOUT PREJUDICE**;

(4) Judgment shall be entered contemporaneously herewith; and

(5) This matter is **CLOSED** and **STRICKEN** from the Court's active docket.

This 10th day of April, 2020.

Signed By:
*David L. Bunning*  *DB*
**United States District Judge**

J:\DATA\ORDERS\PSO Orders\Al Maqablh 19-83 Screening Order.docx